**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| 1.  WILBANKS SECURITIES, INC, an Oklahoma corporation,  2. AARON B. WILBANKS, an individual,  3. RANDALL L. WILBANKS, an individual,  4.  STEVEN S. SHARPE, an individual, and  5. WILLIAM R. FREEMAN, an individual,<br><br>   PLAINTIFFS<br><br>vs<br><br>6. SCOTTSDALE INSURANCE COMPANY,<br>7. NATIONWIDE INSURANCE COMPANY,<br>8. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURG, and<br>9. AIG PROPERTY CASUALTY<br><br>   DEFENDANTS | CASE NO. CIV-16-294-L |

**PETITION**

Plaintiffs, Wilbanks Securities, Inc, ("WSI"), Aaron B. Wilbanks ("AW"),

Randall L. Wilbanks ("RW"), Steven D. Sharpe ("SS"), and William R. Freeman

("WF") (collectively "Plaintiffs") by and through their undersigned counsel, and

pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure,

hereby seeks a declaratory judgment and other such relief against Defendants, Scottsdale

Insurance Company ("Scottsdale"), Nationwide Insurance Company ("Nationwide"),

National Union Fire Insurance Company of Pittsburg ("Nat'l Union"), and AIG Property

Casualty ("AIG") (collectively "Defendants").

**PARTIES**

1) At all pertinent times, Plaintiff WSI was, and still is, a corporation organized and existing under the laws of the State of Oklahoma with its principal place of business in Oklahoma County, Oklahoma.

2) At all pertinent times, Plaintiff AW was, and still is, a natural person and resident of Oklahoma City, Oklahoma.

3) At all pertinent times, Plaintiff RW was, and still is, a natural person and resident of Orlando, Florida.

4) At all pertinent times, Plaintiff SS was, and still is, a natural person and resident of Oklahoma City, Oklahoma.

5) At all pertinent times, Plaintiff WF was, and still is, a natural person and resident of Denver, Colorado.

6) At all pertinent times, Defendant Scottsdale was, and still is, a corporation organized and existing under the laws of the State of Ohio with its principal place of business in Ohio.

7) At all pertinent times, Defendant Nationwide was, and still is, a corporation organized and existing under the laws of the State of Wisconsin with its principal place of business in Wisconsin.

8) At all pertinent times, Defendant Nat'l Union was, and still is, a corporation organized and existing under the laws of the State of Pennsylvania with its principal place of business in Pennsylvania.

9) At all pertinent times, Defendant AIG was, and still is, a corporation organized and existing under the laws of the State of Pennsylvania with its principal place of business in Pennsylvania.

2

## NATURE OF THE CLAIM

10)     This is an action for breach of contract and breach of duty of good faith and fair dealing against Scottsdale and Nationwide and their bad faith breach of contract of the rights and obligations under Policy No. BFS0002154-OK-03-00 (the "E&O Policy"),[1] which was issued to WSI for the period of March 9, 2014 to March 9, 2015, and Nat'l Union and AIG and their bad faith breach of contract of the rights and obligations under Bond No. 015900031 (the "Fidelity Bond")[2] which was issued to WSI for the period of November 1, 2013 to November 1, 2014, respectively.

11)     AW, RW, SS, and WF were additional insureds of both the E&O Policy and the Fidelity Bond.

12)     Plaintiffs are currently named respondents in an ongoing FINRA Dispute Resolution arbitration with non-parties, Kent and Shawna Powell (the "Powells") regarding an investment of the Powells placed on or about February 2012.  The case involving the Powells and Plaintiffs is styled ***In the Matter of Arbitration Between: Marvin Kent Powell and Shawna Powell, Claimants v. Wilbanks Securities, Inc., Aaron B. Wilbanks, Randall L. Wilbanks, Steven D. Sharpe, and Will R. Freeman, Respondents, FINRA Dispute No. 14-03350*** (the "Underlying Lawsuit").[3]

13)     Plaintiffs are seeking a judgment against Defendants for their respective breaches of contract against Plaintiffs by failing to provide for Plaintiffs' defense against the claims presented by the Powells and their respective bad faith denials of coverage

## JURISDICTION AND VENUE

---

[1] *See* a true and correct copy of the E&O Policy, attached hereto as Exhibit 1.
[2] *See* a true and correct copy of the Fidelity Bond, attached hereto as Exhibit 2.
[3] *See*, a true and correct copy of the Powells Statement of Claim, which is attached hereto as Exhibit 3.

14)     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332

because there is diversity of citizenship among the parties and the matter in controversy

exceeds the sum of $75,000, exclusive of interest, attorneys' fees and costs.[4]

15)     There is no mandatory or binding arbitration agreement language that precludes

this Court from having jurisdiction over the present matter.

16)     Venue is proper in the United States District Court for the Western District of

Oklahoma pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions

giving rise to the claims asserted below occurred within the boundaries of this Court.

Further, Defendants are all insurance companies with sufficient contacts within the

jurisdictional boundaries of this Court.

## FACTUAL BACKGROUND

17)     On November 12, 2014, the Powells filed suit against Plaintiffs in the amount of

$1,462,000.00 and requested other undefined statutory damages.[5]

18)     The Powells allege unsuitability, negligence, fraud, and negligent supervision

relating to their February 2012 $1,500,000.00 investment in Aztec Oil & Gas, Inc.'s

("Aztec") XII-B general/limited partnership investment program (hereinafter the

"Program").[6]

19)     The Powells allege they were induced to invest in the Program after certain

written assertions were made by non-party John R. Stevens ("Stevens"), a former

registered representative of WSI, now deceased.[7]

---

[4] *See* Exhibit 3.
[5] *See* Exhibit 3.
[6] *See* Exhibit 3.
[7] *See* Exhibit 3.

20)     The Powells allege they have not lost the entirety of their investment in the Program.[8]

21)     On or about April 2014, WSI was made aware of two emails sent by Stevens to the Powells in which Stevens guaranteed the Powells would not lose their investment in the Program.

22)     On May 1, 2014, WSI timely advised Scottsdale and Nationwide of a potential claim regarding the actions of Stevens.

23)     On May 1, 2014, WSI timely advised Nat'l Union and AIG of a potential claim regarding the actions of Stevens.

24)     On October 13, 2014, WSI forwarded Scottsdale and Nationwide a copy of the Powells' formal demand letter prior to arbitration.

25)     On December 10, 2014, WSI forwarded Scottsdale and Nationwide a copy of the Powells' Statement of Claim filed with FINRA Dispute Resolution.

26)     On December 10, 2014, WSI forwarded Nat'l Union and AIG the Powells' Statement of Claim and indicated WSI believed the Powells' claims, at least in part, fell under the Fidelity Bond.

27)     On or about March 9, 2015, WSI purchased another policy for errors and omissions coverage from Scottsdale for the period of March 9, 2015 to March 9, 2016.

28)     As of March 9, 2015, the date on which WSI purchased another policy for errors and omissions coverage from Scottsdale, Scottsdale had yet to provide Plaintiffs with any communication indicating whether or not coverage would apply to the Underlying Lawsuit.

---

[8] *See* Exhibit 3.

29)     Scottsdale did not provide any coverage letter to Plaintiffs until September 22, 2015 – one year and five months after WSI first reported a potential claim regarding Stevens.  In its September 22, 2015 correspondence, Scottsdale notes it will not provide defense or indemnification for Plaintiffs, citing the Powells' allegations of purported wrongdoing in the Underlying Lawsuit.

30)     Plaintiffs responded to Scottsdale's coverage denial letter on December 9, 2015 - asking for, at a minimum, a reservation of rights on the part of Scottsdale/Nationwide. Plaintiffs also objected to Scottsdale's apparent position that Plaintiffs were guilty until proven innocent.

31)     On February 24, 2016, Nationwide's retained coverage counsel, Gretchen Carner, on behalf of Scottsdale issued a continuing denial of coverage for Plaintiffs regarding the Underlying Lawsuit.  Ms. Carner's correspondence included a denial of coverage and citation of California laws inapplicable to claim(s) presented by WSI.

32)     Counsel for Plaintiffs replied to Ms. Carner's February 24, 2016 correspondence on March 17, 2016.  Plaintiffs' response to Ms. Carner noted the bad faith delay by Scottsdale/Nationwide in providing a coverage opinion to Plaintiffs and that the arguments presented by Scottsdale/Nationwide were either inaccurate or misconstruing the terms of the adhesion contract drafted by Scottsdale/Nationwide.

33)     Scottsdale and Nationwide continue to deny coverage in connection with the Underlying Lawsuit under the E&O Policy, refusing to even issue a reservation of rights – as requested by Plaintiffs in all communications to Scottsdale and Nationwide.

34)     While Nat'l Union and AIg have not issued a formal denial of coverage, representatives of AIG have indicated their intent to ultimately deny coverage under the Fidelity Bond.

## THE POLICIES

35)     The E&O Policy issued to WSI by Scottsdale/Nationwide provides financial services professional liability insurance coverage to Plaintiffs.  Scottsdale was provided notice of a potential claim involving the Powells on May 1, 2014, shortly after discovery of the purported wrongdoing of Stevens.  The E&O Policy was in effect from March 9, 2014 through March 9, 2015, as such there is no dispute regarding the timing of WSI's notice of the Powells' potential claim to Scottsdale.[9]

36)     The E&O Policy provided coverage for WSI, AW, RW, SS, and WF.  The E&O Policy also provided coverage for Stevens.[10]

37)     The E&O Policy included a negotiated "Private Placement Oil & Gas Limited Partnership Endorsement" (hereinafter "PPM Endorsement").  The PPM endorsement provides coverage for "Private Placement Oil and Gas Limited Partnership listed on the Private Placement Oil and Gas Limited Partnerships Endorsement."[11]

38)     While the E&O Policy was being underwritten, WSI provided Scottsdale's underwriting team information regarding all client investments in Aztec investment programs, including the Program.  The information provided by WSI included the investment amounts of each client in Aztec, specifically including the Powells.

39)     During underwriting, Scottsdale's underwriting team indicated Scottsdale would be adding a limit on WSI's client for Private Placement Oil and Gas Limited Partnership

---

[9] *See* Exhibit 1.
[10] *See* Exhibit 1.

investments going forward – "No more than 10% of the 'clients' 'investible net worth' may be invested at any time in any one . . . Private Placement Oil and Gas Limited Partnership . . ." (hereinafter the "10% limitation").

40)    At no point, however, did Scottsdale's underwriting team indicate to WSI the 10% limitation would be applied retroactively to private placements approved prior to March 9, 2014.  Had Scottsdale's underwriting team properly advised WSI regarding Scottsdale's intent to retroactively apply the 10% limitation to investments pre-dating the E&O Policy, WSI desired and intended coverage for all existing investments, and would have attempted to negotiate a provision to grandfather in investments pre-dating the start of the E&O Policy.

41)    Scottsdale provided an endorsement for coverage of the Program as part of the E&O Policy. [12]

42)    The E&O Policy defines "Wrongful act" as "any negligent breach of duty, error, misstatement, misrepresentation, omission, 'publication injury' or other negligent act done or attempted by an insured . . . in conjunction with the provision of covered 'financial services' as set forth in the Limitation of Coverage Endorsement, for the 'client' of the named insured . . . ."[13]

43)    The E&O Policy defines "Financial Services" as "services by a 'broker'-'dealer' to its 'clients' and the 'clients' of its 'registered representatives'; . . . the purchase or sale of 'securities'"[14]

---

[11] *See* Exhibit 1.
[12] *See* Exhibit 1.
[13] *See* Exhibit 1.
[14] *See* Exhibit 1.

44)    Under the E&O Policy, Scottsdale/Nationwide "have the right and duty to defend . . . 'any suit brought against the insured because of a "wrongful act" to which this policy applies and which seeks "damages" which are payable under this policy, *even if any of the allegations of the suit are groundless, false or fraudulent.*"[15]

45)    Under the E&O Policy, Scottsdale/Nationwide "will pay all 'defense costs' which are in excess of the applicable 'retention.'"[16]

46)    Under the E&O Policy, Plaintiffs "shall not admit liability for or settle any "written claim" or "suit" or incur any "defense costs" without [Scottsdale/Nationwide's] written consent."[17]

47)    As previously noted, Plaintiffs were forced to defend against the Powells' claims for approximately one (1) year before Scottsdale/Nationwide even issued a coverage opinion denying coverage – which was one year five months after initial notice by WSI of the Powells' potential claims.

48)    The Fidelity Bond issued to WSI by Nat'l Union/AIG provided coverage for "[l]oss resulting directly from dishonest or fraudulent acts committed by an **Employee** acting alone or in collusion with others."   Such dishonest or fraudulent acts must be committed by the **Employee** with the manifest intent: (1) to cause the **Insured** to sustain such loss; or (2) to obtain financial benefit for the **Employee** or another person or entity."[18]

49)    The Fidelity Bond issued to WSI by Nat'l Union/AIG also provided coverage for "[l]oss through **Forgery** or alteration of, on or in any bills or exchange, checks, drafts,

---

[15] See Exhibit 1.  (emphasis added).
[16] *See* Exhibit 1.
[17] *See* Exhibit 1.
[18] *See* Exhibit 2.

acceptances, **Certificates of Deposit**, promissory notes, or other written promises, orders or directions to pay sums certain in money, due bills, money orders, warrants, orders upon public treasuries, **Letters of Credit**, written instructions or advices directed to the **Insured**, authorizing or acknowledging the transfer, payment, delivery or receipt of funds or **Property**, which instructions or advices purport to have been signed or endorsed by any customer of the **Insured** or by any banking institution or stockbroker but which instructions or advices either bear the forged signature or endorsement or have been altered without the knowledge and consent of such customer, banking institution or stockbroker . . . ."[19]

50)   The Fidelity Bond provided coverage for WSI, AW, RW, SS, and WF.   The E&O Policy also provided coverage for Stevens.[20]

51)   Under the terms of the Fidelity Bond, "[t]he **Underwriter** will indemnify the **Insured** against court costs and reasonable attorneys' fees incurred and paid by the **Insured** in defending any suit or legal proceeding brought against the **Insured** to enforce the **Insured's** liability or alleged liability on account of any loss, claim or damage which, if established against the **Insured**, would constitute a valid and collectible loss sustained by the **Insured** under the terms of this bond."[21]

52)   Under the Fidelity Bond, "**Employee**" is defined as ". . . any registered representative or registered principal or other registered person of the **Insured** . . . ."[22]

53)   Under the Fidelity Bond, "**Forgery**" is defined as "the signing of the name of another with the intent to deceive . . . ."[23]

---

[19] *See* Exhibit 2.
[20] *See* Exhibit 2.
[21] *See* Exhibit 2.
[22] *See* Exhibit 2.

54)     The Underlying Lawsuit alleges Stevens guaranteed the Powells would not lose their investment in the Program without the knowledge, consent or approval of Plaintiffs while using a non-securities approved email address.  These acts by Stevens constitute dishonest acts by an "employee," as that terms is defined under the Fidelity Bond.[24]

55)     The Underlying Lawsuit alleges Stevens forged signatures and initials of the Powells on documentation.  If true, Stevens' forgery of the Powells' signatures and initials constitute dishonest acts by an "employee," as that term is defined under the Fidelity Bond.  These acts would also be covered under the forgery provisions of the Fidelity Bond.[25]

56)     The Powells have also indicated that the financial information provided by Stevens regarding the Powells was incorrect and misrepresented the financial situation of the Powells.  If true, Stevens' misrepresentations deceived Plaintiffs in their review of the Powells' proposed investment in the Program with the intent of deceiving Plaintiffs into approving the Powells' investment in the Program.  As such, Stevens' conduct would constitute dishonest acts by an "employee," as that term is defined under the Fidelity Bond.[26]

57)     By sending emails binding WSI without the implied or expressed authority to do so, and without the knowledge, consent or approval of WSI, Stevens engaged in acts that displayed a manifest intent to cause Plaintiffs a loss.[27]

---

[23] *See* Exhibit 2.
[24] *See* Exhibit 2.
[25] *See* Exhibit 2.
[26] *See* Exhibit 2.
[27] *See* Exhibit 2.

58)    As Stevens was not licensed to sell the Program, the compensation he received through his marketing agreement with WF was not in the ordinary course and scope of his "employment" with WSI, triggering coverage under the Fidelity Bond.[28]

59)    As previously noted, Plaintiffs were forced to defend against the Powells' claims for approximately one (1) year before Nat'l Union/AIG even issued a coverage opinion – which was one year five months after initial notice by WSI of the Powells' potential claims.

## CAUSES OF ACTION

### COUNT I - DECLARATORY RELIEF

60)    Plaintiffs adopt and incorporate by reference the allegations set forth in the preceding paragraphs above as though completely and fully set forth herein.

61)    There is an actual, present and existing controversy between Plaintiffs and Scottsdale/Nationwide regarding Scottsdale's/Nationwide's obligations under the E&O Policy in connection with the Underlying Lawsuit.

62)    There is an actual, present, and existing controversy between Plaintiffs and Nat'l Union/AIG regarding Nat'l Union's/AIG's obligations under the Fidelity Bond in connection with the Underlying Lawsuit.

63)    Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, Plaintiffs seek a judicial declaration of rights and duties under both the E&O Policy and the Fidelity Bond.  The Court's declaration will confer certainty on the parties and serve the interests of justice.

---

[28] *See* Exhibit 2.

64)     Coverage is afforded under the E&O Policy for claims asserted by the Powells in the Underlying Lawsuit because potential claims were reported to Scottsdale/Nationwide during the E&O Policy period.

65)     Coverage is afforded under the E&O Policy for claims asserted by the Powells in the Underlying Lawsuit based on the definition of financial services.

66)     Coverage is afforded under the E&O Policy for claims asserted by the Powells in the Underlying Lawsuit based on the definition of wrongful act.

67)     Coverage is afforded under the E&O Policy for claims asserted by the Powells in the Underlying Lawsuit based on the E&O Policy Endorsement specifically extending coverage to Aztec.

68)     Coverage is afforded under the Fidelity Bond for claims asserted by the Powells in the Underlying Lawsuit because potential claims were reported to Nat'l Union/AIG during the Fidelity Bond period.

69)     Coverage is afforded under the Fidelity Bond for claims asserted by the Powells in the Underlying Lawsuit regarding purported "loss resulting directly from dishonest or fraudulent acts committed by an Employee acting alone or in collusion with others" as outlined in Provision I(A) of the Fidelity Bond.

70)     Coverage is afforded under the Fidelity Bond for claims asserted by the Powells in the Underlying Lawsuit regarding purported "loss through Forgery . . . ." as outlined in Provision I(D) of the Fidelity Bond.

71)     Coverage is afforded under the Fidelity Bond for claims asserted by the Powells in the Underlying Lawsuit based on the application of the Section I(E) of the Insuring Agreements of the Fidelity Bond.

72)    Coverage is afforded under the Fidelity Bond for claims asserted by the Powells in the Underlying Lawsuit based on the definition of Employee.

73)    Coverage is afforded under the Fidelity Bond for claims asserted by the Powells in the Underlying Lawsuit based on the definition of Forgery.

***COUNT II – BREACH OF CONTRACT***

74)    Plaintiffs adopt and incorporate by reference the allegations set forth in the preceding paragraphs above as though completely and fully set forth herein.

75)    On or about March 9, 2014, Scottsdale/Nationwide and Plaintiffs entered into a valid and enforceable contract for errors and omissions insurance coverage, the E&O Policy, which was in effect at the time the WSI became aware of a potential claim regarding the Powells.

76)    Plaintiffs paid adequate consideration, in the form of the E&O Policy premium for the contract.

77)    Scottsdale/Nationwide breached the E&O Policy with Plaintiffs by failing to provide a coverage opinion within a reasonable time and by failing to provide a defense for legal claims falling under the E&O Policy.

78)    As a result of Scottsdale's/Nationwide's breach of contract, Plaintiffs have suffered, and continue to suffer, damages in the defending against the Underlying Lawsuit without coverage under the E&O Policy for over one year.  Plaintiffs are also faced with the prospect of suffering additional damages as a result of the Underlying Lawsuit.

79)    On or about November, 1, 2013, Nat'l Union/AIG and Plaintiffs entered into a valid and enforceable contract for fidelity bond insurance coverage, the Fidelity Bond,

which was in effect at the time WSI became aware of a potential claim regarding the Powells.

80)     Plaintiffs paid adequate consideration, in the form of the Fidelity Bond premium for the contract.

81)     Nat'l Union/AIG breached the Fidelity Bond with Plaintiffs by failing to provide a coverage opinion within a reasonable time and by failing to provide a defense for legal claims falling under the Fidelity Bond.

82)     As a result of Nat'l Union/AIG's breach of contract, Plaintiffs have suffered, and continue to suffer, damages in the defending against the Underlying Lawsuit without coverage under the Fidelity Bond for over one year.  Plaintiffs are also forced with the prospect of incurring additional damages as a result of the Underlying Lawsuit.

*COUNT III – BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING*

83)     All previous numerical paragraphs are herein restated and incorporated herein.

84)     Scottsdale/Nationwide, as outlined in the E&O Policy, were required to provide coverage to Plaintiffs, including payment for reasonable defense costs.

85)     Scottsdale's/Nationwide's denial of coverage for the Underlying Lawsuit is unreasonable because (1) it failed to perform a reasonable investigation of the underlying claim, (2) it failed to properly evaluate the results of its investigation of the claim, (3) it had no reasonable basis for its refusal to provide coverage under the E&O Policy, and (4) it failed to provide Plaintiffs with a coverage determination within a reasonable time and allowed Plaintiffs to renew coverage (including the payment of a new premium) before denying coverage one year and 5 months after the initial claim was made.

86)     For the reasons outlined in numerical paragraph 71, above, Scottsdale/Nationwide did not deal fairly and in good faith with Plaintiffs.

87)     The violation of Scottsdale's/Nationwide's duty of good faith and fair dealing is the direct and proximate cause of the injuries sustained and to be sustained by Plaintiffs.

88)     Scottsdale's/Nationwides's past and ongoing acts of bad faith are reckless or intentional, giving rise to punitive damages as authorized by Oklahoma law.

89)     Nat'l Union/AIG, as outlined in the Fidelity Bond, were required to provide coverage to Plaintiffs, including payment for reasonable defense costs.

90)     Nat'l Union/AIG's denial of coverage for the Underlying Lawsuit is unreasonable because (1) it failed to perform a reasonable investigation of the underlying claim, (2) it failed to properly evaluate the results of its investigation of the claim, (3) it had no reasonable basis for its refusal to provide coverage under the Fidelity Bond, and (4) it failed to provide Plaintiffs with a coverage determination within a reasonable time before denying coverage one year and 5 months after the initial claim was made.

91)     For the reasons outlined in numerical paragraph 75, above, Nat'l Union/AIG did not deal fairly and in good faith with Plaintiffs.

92)     The violation of Nat'l Union's/AIG's duty of good faith and fair dealing is the direct and proximate cause of the injuries sustained and to be sustained by Plaintiffs.

93)     Nat'l Union's/AIG's past and ongoing acts of bad faith are reckless or intentional, giving rise to punitive damages as authorized by Oklahoma law.

94)     Plaintiff's have acted in good faith, submitted necessary and required documentation, and attempted negotiations with the Defendants to obtain the coverage purchased.  Defendants have unreasonably and in bad faith refused to provide coverage.

**WHEREFORE,** Plaintiffs respectfully requests that this Court enter a judgment declaring the rights and obligations of the parties under the Policy, including, but not limited to, the following: (a) the E&O Policy and Fidelity Bond do afford insurance coverage in connection with the claims asserted by the Powells in the Underlying Lawsuit; (b) that Scottsdale/Nationwide and Nat'l Union/AIG has an obligation to defend Plaintiffs in the Underlying Lawsuit; (c) that Scottsdale/Nationwide and Nat'l Union/AIG have a duty to make indemnity payments to Plaintiffs in connection with the claims asserted by the Powells in the Underlying Lawsuit; and (d) for all such other and further relief as equity and the justice of the cause may require and permit.

RESPECTFULLY SUBMITTED,

John M. Gibson, 16058

___ss/ John Gibson_____
4334 N.W. Expressway, Suite 220
Oklahoma City, Oklahoma, 73116
(405) 283-4848 (Office)
(972) 798-0202 (Facsimile)
 john.michael.gibson@me.com