IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WILBANKS SECRUITIES, INC, et al., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. CIV-16-294-R<br>) |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

# ORDER

Defendant issued a Blanket Fidelity Bond for Securities Dealers, Bond Number No. 015900031 ("the Bond"), to Wilbanks Securities, Inc., with a coverage period from November 1, 2013 to November 1, 2014. Plaintiffs filed this action seeking a declaratory judgment that certain claims being pursued against Wilbanks Securities in a pending Financial Industry Regulatory Authority ("FINRA") proceeding are covered by the Bond and that Defendant National Union Fire Insurance Company of Pittsburgh ("National Union") will be required to indemnify Wilbanks Securities for any award and defense costs. Plaintiff also seeks damages for breach of contract and breach of the duty of good faith and fair dealing. Defendant seeks summary judgment, asserting that by its terms, the Bond does not provide coverage for the claims asserted in the FINRA proceedings. (Doc. No. 54). Plaintiff responded to the motion and Defendant filed a Reply in support of its position. Accordingly, the motion is ripe for disposition. Having considered the parties'

submissions, the Court finds as follows.[1]

Wilbanks Securities asserts that in May 2014, it provided notice to National Union of a potential claim by Kent and Shawna Powell regarding a February 2012 investment made by the Powells, which Wilbanks Securities sold them. In December 2014, Plaintiff provided National Union with a copy of the Powells' Statement of Claim to FINRA, and asserted that the claim, at least in part, was subject to coverage under the Bond. In the Statement of Claim, the Powells alleged claims stemming from investment in the Aztec Drilling Program, as described below.

Mr. and Mrs. Powell had a prior relationship with Wilbanks Securities and one of its registered representatives, John Stevens, when in 2012 Mr. Powell sold his business for 1.5 million dollars. Powell sought Mr. Stevens's advice on how to best invest the proceeds of the sale. Mr. Stevens first recommended a Charitable Remainder Unitrust, but withdrew this recommendation because the Powells would be unable to access the funds once transferred to the trust. He then recommended the Aztec Drilling Program, representing to the couple that he and Wilbanks Securities had researched the company and its drilling programs and investment therein would carry zero risk and provide an 88% tax deduction in 2012, as well as providing substantial monthly income after a year. Mr. Stevens did not offer alternative investment suggestions, nor did he advise the Powells that he lacked the requisite license to sell the investment, although it was one of the "approved products" of

---

[1] Defendant's motion addressed the individual Plaintiffs and their claims. In response, the individuals concede they lack a legal basis to seek relief under the Bond. Plaintiff Wilbanks Securities further concedes that Defendant had no duty to defend the ongoing FINRA proceedings under the terms of the Bond and further, that it was not relying on clause (D)- Forgery or Alteration- to support its claims. As such, Defendant's arguments addressing these issues will not be addressed herein.

Wilbanks Securities. In January 2013, acting in reliance on Stevens's representations, the Powells met with Mr. Stevens to execute the necessary subscription documents for the Aztec Drilling Program. They concede their signatures appear on pages 9 and 12 of the Subscription Documents Booklet, but contend initials in devoted spaces throughout the booklet are not theirs, nor did they make any "check marks" in the document. Mr. Stevens indicated they should sign their names and he would complete the forms. The Powells, concerned about the security of their sizeable investment, did not wire the necessary funds until emailing with Mr. Stevens, who assured the Powells they would not lose their investment, and that he had an E&O policy for their protection in the event their investment was lost. Believing Mr. Stevens's additional representations, the Powells funded their 1.5 million dollar investment. However, despite Mr. Stevens's promises, the Powells received only $37,000 in distributions, none of the promised tax benefits; the remainder of their investment was lost.

In connection with their allegations, the Powells contend their signatures and initials were forged on a General/Limited Partnership Disclosure Form that bears the Wilbanks Securities, Inc. heading, which required the would-be investor to acknowledge:

> As an illiquid investment, I understand that my principal may be tied up for more than 10 years. I hereby attest that the investment does not represent more than 10% of my total liquid assets and that my total illiquid direct participation program and limited partnership investments, including this purchase, do not exceed 20% of my total liquid assets. (Exceptions may be available for accredited investors.)

Additionally, Will Freeman, who the Powells alleged to be a broker and general securities principal with Wilbanks Securities, requested an exception to the 10% rule on their behalf,

3

although they were unaware of the form or the need for an exception. Will Freeman never spoke with the Powells about the program or its suitability, but received a commission because the records indicated that he sold the investment. The Powells allege this was so because the Aztec Drilling Program was not available to Mr. Stevens under the Series 6 license he held, but was available to Mr. Freeman. The Powells additionally contend that after their investment was funded, Mr. Stevens requested that if anyone made inquiry, they should indicate Will Freeman was their broker and had made the recommendation. Their claims in arbitration are grounded on the alleged material misstatements of Mr. Stevens and the unsuitability of the investment, as well as the alleged forgeries. The FINRA arbitration remains ongoing.

As noted, Plaintiff filed the action seeking declaratory relief with regard to indemnity under the Bond, which includes the following provision:

> Under the terms of the Fidelity Bond, "[t]he Underwriter will indemnify the Insured against court costs and reasonable attorneys' fees incurred and paid by the Insured in defending any suit or legal proceeding brought against the Insured to enforce the Insured's liability or alleged liability on account of any loss, claim or damage which, if established against the Insured, would constitute a valid and collectible loss sustained by the Insured under the terms of this bond."

Doc. No. 1-2. Defendant National Union seeks summary judgment on the basis that even if the Powells establish their claims in arbitration, the claims fall outside the terms of the Bond, and therefore, Wilbanks Securities is without recourse thereunder.

Plaintiff's claims are premised in part on the Federal Declaratory Judgment Act which provides that "[i]n a case of actual controversy within its jurisdiction,...any court of the United States, upon the filing of an appropriate pleading, may declare the rights and

other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) . "The phrase 'case of actual controversy' in the Act refers to the type of 'Cases' or "Controversies' that are justiciable under Article III of the United States Constitution." *Columbian Fin. Corp. v. BancInsure, Inc*., 650 F.3d 1372, 1376 (10th Cir. 2011) (citations omitted). The Tenth Circuit has cautioned that "Article III has long been interpreted as forbidding federal courts from rendering advisory opinions." *Id*. "It is not the role of federal courts to resolve abstract issues of law. Rather, they are to review disputes arising out of specific facts when the resolution of the dispute will have practical consequences to the conduct of the parties." *Id.* The central question in deciding whether a declaratory judgment action satisfies the case or controversy requirement is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genetech, Inc*., 549 U.S. 118, 127 (2007).

The Court finds that there exists an "injury in fact" herein despite the absence of an award in favor of the Powells, based on the following: (1) the pending FINRA arbitration proceedings; (2) Wilbanks Securities clearly plans to seek indemnity for any award that results from the FINRA proceedings; (3) the Powells claims may fall outside the scope of the fidelity bond. Courts routinely hold, under similar contingent circumstances, that Article III and the Declaratory Judgment Act's "injury in fact" requirements are satisfied. *See Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1274 (10th Cir. 1989) (explaining that the existence of contingencies, such as whether victim has obtained a final judgment,

5

does not prohibit the Court from issuing a declaratory judgment); *Cont'l Cas. Co. v. Bowen*, No. 2:09-CV-00810-TC, 2010 WL 3743909, at *1 (D. Utah Sept. 22, 2010) ("Federal courts can issue declaratory judgment on the scope of insurance coverage, even if the federal declaratory judgment action concerns some of the same factual questions as the state court action about which coverage is disputed."); *Farmers All. Mut. Ins. Co. v. Willingham*, No. 08-CV-0532-CVE-FHM, 2009 WL 3720023, at *2 (N.D. Okla. Oct. 28, 2009) (justiciable controversy existed where insurer sought declaration of coverage of a "specific claim" in the underlying civil case because judgment would end the controversy between the insurer and its insured); 22A Am. Jur. Declaratory Judgments § 133 (generally, "an insurer's action for a declaration that a liability policy does not cover the claims against its insured is a case of actual controversy sufficient to entertain the action for a declaratory judgment"). Therefore, the Court concludes it has subject matter jurisdiction over the dispute.

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a

verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). Plaintiff Wilbanks Securities does not dispute any facts set forth by Defendant but argues Defendant misinterprets the terms of the Bond. The Court concurs with Defendant's interpretation of the relevant provisions thereof, and concludes that Defendant is entitled to judgment in this action.

Plaintiff relies on two provisions in the "Insuring Agreements" section of the Bond, clauses (A) and (E)(1). By virtue of the Bond, Defendant agreed to indemnify and hold harmless the Insured under clause (A), as follows:

> Fidelity
>
> Loss resulting directly from dishonest or fraudulent acts committed by an Employee acting alone or in collusion with others. Such dishonest or fraudulent acts must be committed by the Employee with the manifest intent:
> (1) to cause the Insured to sustain such loss; or
> (2) to obtain financial benefit for the Employee or another person or entity.

Doc. No. 1-2. Defendant contends there is no coverage pursuant to this provision because any award Wilbanks Securities may be ordered to pay in the FINRA arbitration will not fulfill the "loss resulting directly" condition and additionally, that Plaintiff lacks evidence of Mr. Stevens's manifest intent.[2] In response, Wilbanks Securities focuses on Defendant's manifest intent argument, arguing that under the Tenth Circuit's more liberal approach to intent, it can prevail. Plaintiff does not address Defendant's contention that if it is ordered to pay an award to the Powells in the arbitration, that amount will not constitute a "loss resulting directly" from employee dishonesty.[3]

---

[2] Mr. Stevens is deceased.
[3] Citing to the Oklahoma Rules of Professional Conduct, Plaintiff argues Defendant's counsel willfully failed to disclose binding Tenth Circuit authority controlling the Court's interpretation of "manifest intent." The authority upon

The Court finds this case analogous to cases from another jurisdiction, and the outcome therein persuasive.

> Between these slightly different types of coverage, there is much common ground: by their clear terms, the fidelity bonds require that the unfaithful employee must intend to cause the employer a loss directly and solely relating to the faithless act, classically describing embezzlement or another type of theft from the employer (*Glusband v. Fittin Cunningham & Lauzon*, 892 F.2d 208 (2nd Cir. 1989)) or even retaliation against an employer that benefits a third-party in collusion with the employee (*see, General Analytics Corp. v. CNA Insurance Companies*, 86 F.3d 51 (4th Cir.1996)). An embezzler, at one end of the continuum, necessarily intends to cause the employer the loss, since the employee's gains are directly at the employer's expense (*First National Bank of Louisville v. Lustig* [*Lustig I*], 961 F.2d 1162 (5th Cir.1992)). At the other end of the continuum, not triggering fidelity coverage, is the situation where the employee's dishonesty at the expense of a third-party is intended to benefit the employer, since the employee's gain results from the employer's gain. Under such circumstances, even if the employer suffers a loss, fidelity coverage is not triggered (*Id.*; *Municipal Securities v. Insurance Co. of N.A.*, 829 F.2d 7 (6th Cir.1987)).

*Aetna Cas. & Sur. Co. v. Kidder, Peabody & Co. Inc.*, 246 A.D.2d 202, 209, 676 N.Y.S.2d 559, 563 (1998). This same view was espoused with regard to fidelity bonds issued to banks in numerous cases. For example, the Court of Appeals of Wisconsin concluded that the insured's "losses-the settlements with the mortgage companies- are not the direct result

---

which Plaintiff relies, however, is persuasive, not binding, as this issue is governed by state law, and both cases cited by Plaintiff involved the Federal Deposit Insurance Company, and the application of either federal law or the law of Utah. Plaintiff does not point to any Oklahoma or federal authority interpreting Oklahoma law on the issue of "manifest intent." Furthermore, contrary to Plaintiff's statement at page 13 of its brief, the Tenth Circuit in *FDIC v. Oldenburg*, 34 F.3d 1529 (10th Cir. 1994), did not reject the argument espoused by Defendant herein regarding the "loss resulting directly" requirement. Finally, in *FDIC v. United Pacific Ins. Co.*, 20 F.3d 1070 (10th Cir. 1994), the issue regarded the making of a loan, and the court noted "[i]n terms of loans with respect to the making of loans, a bank suffers a loss when funds are disbursed due to the employee's wrongful conduct." *Id.* at 1080. The court concluded that the bank actually disbursed a 4.5 million dollar loan that could never be collected, and thus the FDIC, having stepped into the Bank's position, had losses directly resulting from the employee's dishonesty. The facts of that were markedly different from the facts presented in this case. As such, neither case dictates the outcome of this matter, nor do they address the issue Plaintiff chose to address only in passing.

8

of the employees' dishonesty; the employees were dishonest by permitting financially inappropriate people to obtain mortgages from other entities, not the employer bank. Thus, the bank initially lost nothing as a result of their dishonesty. It was only after the unsuitable mortgagees defaulted on their loans and the mortgage companies sued Tri City that "losses" resulted." *Tri City Nat. Bank. v. Fed. Ins. Co.*, 674 N.W.2d 617 (Wis. Ct. App. 2003). The Delaware Chancery Court similarly weighed in:

> As cases involving the revised bond language moved through the courts, a new majority rule emerged under which coverage generally is unavailable for third-party claims. The now prevailing approach starts from the indisputable proposition that fidelity bonds provide indemnification against first-party property loss, not protection against third-party liability. "The difference turns on what is defined as the risk. [Liability] [i]nsurance covers the liability of the insureds to a third party, while fidelity bonding covers the loss of property owned by the insureds or held by the insureds, as a consequences of employee dishonesty." *Kidder, Peabody*, 676 N.Y.S.2d at 565. "Although employee dishonesty policies may cover the loss of third-party property in the possession of the insured, these policies do not serve as liability insurance to protect employers against tortious acts committed against third parties by their employees." *Lynch Props.*, 140 F.3d at 629 (citation omitted); *accord Vons*, 212 F.3d at 492*; City of Burlington v. W. Sur.* Co., 599 N.W.2d 469, 472 (Iowa 1999); *Travelers Ins. Cos. v. P.C. Quote, Inc.*, 211 Ill. App. 3d 719, 570 N.E.2d 614, 621, 156 Ill. Dec. 138 (Ill. App. Ct. 1991).
> 
> Courts following the new majority rule also rely heavily on the "resulting directly from" language, interpreting it as requiring an immediate causal connection between the dishonest or fraudulent conduct and the loss. Fidelity coverage is "meant to insure . . . against immediate harm from employee dishonesty . . . ." *Lynch Props. Inc. v. Potomac Ins. Co*., 962 F. Supp. 956, 964 (N.D. Tex. 1996), *aff'd*, 140 F.3d 622 (5th Cir. 1998). Many of the cases simply pronounce that "direct means direct." When employee fraud or dishonesty targets a third party, it is the third party that suffers the direct loss as a result of the fraud. *See Kidder, Peabody*, 676 N.Y.S.2d at 564. The insured's liability arises indirectly through the doctrine of vicarious liability or another tort theory. *See id*. Although the Massachusetts Supreme Court has not yet spoken, courts applying Massachusetts law have followed the new majority rule.

*Mass. Mut. Life Ins. Co. v. Certain Underwriters at Lloyd's of London*, 2010 Del. Ch. LEXIS 156, *55-59 676 N.Y.S.2d 559, 2010 WL 2929552 (Del. Ch. July 23, 2010). The undersigned predicts the Oklahoma Supreme Court would follow the majority rule with regard to the term "directly," and thus, because Plaintiff seeks to impose liability on Defendant based on liability that may arise from the claims of third-parties, the Court finds Defendant is entitled to summary judgment with regard to the Insuring Agreement, clause (A).

Defendant also seeks summary judgment on Plaintiffs' contention that the Powells' FINRA claims are covered by clause (E) of the Insuring Agreement. Clause (E) provides, in relevant part, that Defendant will:

> indemnify and hold harmless the Insured for . . . [l]oss sustained by the **Insured**, including loss sustained by reason of liability imposed upon the **Insured** by law or by the constitution, rules or regulations of any self-regulatory organization or **FINRA** of which the Insured is a member . . . . (1) through the **Insureds** having, in good faith and in the course of business, whether for its own account or for the account of others, in any representative, fiduciary, agency or any other capacity, either gratuitously or otherwise, purchased or otherwise acquired, accepted or received, or sold or delivered, or given any value, extended any credit or assumed any liability, on the faith of or otherwise acted upon, any securities, documents, other written instruments, or **Uncertificated Securities**, in any book entry form which prove to have been;
> (a) counterfeited or **Forged** as to the signature of any maker, drawer, issuer, endorser, assignor, lessee, transfer agent or registrar, acceptor, surety or guarantor or as to the signature of any person signing in any other capacity[.]

Doc. No. 1-2. Defendant contends this provision does not apply herein because the allegedly forged document must be of the type described in (E) and the General/Limited Partnership Disclosure is not of the type described above. In response Plaintiff contends

10

that Defendant misrepresents the language of (E), because the forgery is not limited to "primarily commercial paper" as argued by National Union. To support its position Wilbanks Securities relies on the seemingly broad term "document."

As noted by Defendant in its Reply brief, however, clause (E) defines "documents" as part of the phrase "[s]ecurities, documents or other written instruments," which "shall be deemed to mean original (including original counterparts) negotiable or non-negotiable agreements in writing having value, which value is, in the ordinary course of business transferable by delivery of such agreements with any necessary endorsement or assignment." Thus, the broad definition of "document" espoused by Wilbanks Securities is unsupported by the terms of the Bond, which control the outcome of this dispute. Furthermore, Plaintiff does not argue, and the Court cannot conclude based on the evidence before the Court that the alleged forgery of the partnership disclosure or any portion of the Subscription documents met these requirements.

In *Union Investment Company v. Fidelity & Deposit Company of Maryland*, 400 F. Supp. 860 (E.D. Mich.1975), the court listed five elements essential to classification as a "security document or other written instrument":

1. an original (or counterpart) and in writing;
2. an agreement;
3. negotiable or non-negotiable;
4. must have "value"; and
5. said value must be transferable in the ordinary course of business by delivery with any necessary endorsement or assignment.

*See also Richardson Natl. Bank v. Reliance Ins. Co.*, 491 F. Supp. 121, 123 (N.D.Tex. 1977). Plaintiff presents no facts from which the Court can conclude that the partnership

disclosure or the subscription booklet has value and that said value is transferable in the ordinary course of business under the conditions identified above. As such, the Court concludes Defendant National Union is entitled to summary judgment with regard to clause (E) of the Bond.

For the reasons set forth herein, the Court finds that there are no genuine issues of material fact remaining for resolution at trial and that Defendant is entitled to summary judgment. Accordingly, Defendant' Motion (Doc. No. 54) is hereby GRANTED. Judgment shall be entered accordingly.

IT IS SO ORDERED this 6th day of February 2018.

*David L. Russell*

**DAVID L. RUSSELL**
**UNITED STATES DISTRICT JUDGE**